```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
AUTOMOTIVE LIFT AND EQUIPMENT CORP.,

                                    Plaintiff,

        -against-

NATIONAL AUTO TOOLS, INC.,

                                    Defendant.
------------------------------------------------------------X
```

**08 CIV. 4444**

**COMPLAINT**

Civ.        2008

Jury Demanded

JUDGE ROBINSON

Plaintiff, **AUTOMOTIVE LIFT AND EQUIPMENT CORP.**, by its attorneys, **CUDDY & FEDER LLP (Joshua J. Grauer, 4594)**, as and for its Complaint against Defendant, **NATIONAL AUTO TOOLS, INC.**, hereinafter alleges as follows:

1.  This action is brought seeking to hold Defendant liable for all damages that have been and will continue to be sustained by Plaintiff arising from Defendant's sale to Plaintiff of automotive lifts containing plastic rollers. The automotive lifts containing plastic rollers were purchased by Plaintiff for resale to its customers, who use the automotive lifts to lift and hold automobiles and the incidental weight thereof. These automotive lifts have failed of their intended purpose and function, and Defendant, despite notice and demand, has ignored and continues to ignore its responsibility to Plaintiff and Plaintiff's customers for all damages arising therefrom.

2.  Accordingly, this action is brought seeking damages arising from Defendant's (1) breach of contract, (2) breach of fitness for a particular purpose and (3) breach of merchantability.

C&F: 916962.2

## THE PARTIES

3. That at all relevant times Plaintiff Automotive Lift and Equipment Corp. was and still is a corporation duly organized and existing under and pursuant to the laws of the State of New York, having an office and place of business at 3 Rye Ridge Plaza, Port Chester, New York 10573 (hereinafter "Plaintiff").

4. Upon information and belief, at all relevant times hereinafter mentioned, Defendant National Auto Tools, Inc. was and still is a corporation having an office and principal place of business at 814 Blue Mound Road, Fort Worth, Texas 76131 (hereinafter "Defendant").

## JURISDICTION

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 in that this is a civil action wherein the amount in controversy exceeds the sum of Seventy-Five Thousand ($75,000.00) Dollars, exclusive of interest and costs, and is between citizens of different states.

6. Venus is proper in this judicial district pursuant to 28 U.S.C. § 1391 in that a substantial part of the events giving rise to the claims herein occurred in this judicial district in light of Plaintiff's dealings with Defendant from its office in Port Chester, New York.

## CASE AND CONTROVERSY

7. That Defendant is engaged in the importing and sale within the State of New York of automotive lift equipment and on a regular basis transacts business and is presently transacting business within the State of New York.

C&F: 916962.2

8. That in or about November or December 2006 Plaintiff began to purchase automotive lifts from Defendant.

9. That beginning at some time in or about March of 2007, without advising Plaintiff of any change in the manufacturer of the lifts to be sold to Plaintiff as part of the ongoing course of dealings between the parties, Defendant changed manufacturers and began selling to Plaintiff automotive lifts containing rollers made of a heavy duty and durable plastic which was different than the earlier lifts sold by Defendant to Plaintiff.

10. Upon noticing a difference in the lifts and inquiring of Defendant, Plaintiff was advised by Defendant that these lifts were state of the art and perfectly fit for the intended purpose and function as and for an automotive lift.

11. In reliance upon Defendant's representations and Defendant's superior knowledge with respect to the automotive lifts imported by Defendant and being sold by Defendant to fulfill Plaintiff's orders, Plaintiff purchased same and sold them in the ordinary course to Plaintiff's customers.

12. That it has recently been brought to Plaintiff's attention by customers that several of the automotive lifts purchased from Defendant which contained plastic rollers and not slider blocks have begun to evidence signs of weakness, deterioration and breakage.

13. That very recently there was further reported to Plaintiff one instance involving the collapse of an automotive lift sold by Defendant to Plaintiff for sale to its retail customers and use as an automotive lift.

14. That as a result of these recent developments, Plaintiff has notified its retail customers of its concerns with respect to the safety of the automotive lifts purchased from Defendant and sold to Plaintiff's retail customers.

15. Plaintiff has prepared a Notice to send to the approximately Four Hundred Seventy-Five Hundred (475±) of its customers to whom the lifts in question were sold and a copy thereof is respectfully marked Exhibit "1" annexed hereto and made a part hereof.

16. That in order to eliminate the risk of collapse and the potential for any damage or injury, Plaintiff has embarked upon a program involving the replacement of the apparently defective plastic rollers forming a part of the automotive lifts sold by Defendant to Plaintiff.

17. That this program, as referenced in Exhibit 1, supra, will involve a significant cost and expense to Plaintiff and great damage to Plaintiff's business reputation.

18. That as the seller of the automotive lifts containing the apparently defective plastic rollers, Defendant must be held accountable and financially responsible for the entire cost of replacement and installation of the replacement parts for the failing plastic rollers at issue in the case at bar, as well as for the substantial damage to Plaintiff's business reputation.

19. That all prior efforts by Plaintiff to obtain cooperation and agreement by Defendant to undertake the necessary repairs and replacements of the plastic rollers at its expense have been to no avail.

20. That despite demand by Plaintiff, Defendant has refused to acknowledge its responsibilities and legal obligations to Plaintiff and Plaintiff's customers herein.

21. That the cost of the necessary repair, replacement and installation and all damages proximately flowing from Defendant's breaches as described hereinabove and hereinafter may exceed the sum of Five Hundred Thousand ($500,000) Dollars.

22. That Plaintiff has provided to Defendant ample opportunity to mitigate damages and assume all costs and expenses in connection with replacement of the suspect parts and installation thereof and Defendant has refused.

23. That, in fact, upon receiving notice of the apparent unsuitability of the plastic rollers for their intended purpose, Defendant actually proceeded to charge one of Plaintiff's customers for replacement parts and installation thereof.

24. That this action is necessary to hold Defendant liable for all damages arising from Defendant's wrongful sale of automotive lifts containing plastic rollers which have failed of their intended purpose and function, thereby causing Plaintiff to sustain the damages sought to be recovered from Defendant herein.

### FIRST CLAIM FOR RELIEF

**(Breach of Contract)**

25. Plaintiff repeats, realleges and reaffirms each and every allegation set forth hereinabove as if set forth at length entirely herein.

C&F: 916962.2

26. Plaintiff and Defendant entered into an agreement commencing in or about November of 2006 whereby Plaintiff agreed to purchase from and Defendant agreed to supply certain automotive lifts for distribution and sale by Plaintiff to its retail customers.

27. At all times Defendant knew that the lifts it sold to Plaintiff were in turn to be sold by Plaintiff to retail customers for lifting of automobiles.

28. In entering into this agreement, Defendant agreed to supply Plaintiff with automotive lifts that would be suitable for their intended purpose of safely lifting and holding automobiles and the prescribed weights so specified.

29. The automotive lifts supplied by Defendant to Plaintiff have exhibited defects and weaknesses, causing on one recent occasion a collapse and, overall, generating numerous complaints from Plaintiff's customers to whom Plaintiff sold the lifts at issue purchased from Defendant.

30. In total, Defendant has supplied Plaintiff with approximately Four Hundred Seventy-Five (475±) automotive lifts that are not suitable for and are incapable of serving their intended purpose of lifting and properly holding automobiles without risk of failure and collapse.

31. Plaintiff has paid Defendant in full for these approximately Four Hundred Seventy-Five (475±) automotive lifts and has fully performed all of its obligations to Defendant pursuant to the parties' agreement.

32. Plaintiff has sold these automotive lifts to its customers in the ordinary course of its business.

C&F: 916962.2

33. Due to Defendant's breach of its agreement with Plaintiff through its failure to provide Plaintiff with automotive lifts capable of safely lifting and holding automobiles, which purpose was known to Defendant at the time of sale, Plaintiff must now repair and/or replace all defective portions of these approximately Four Hundred Seventy-Five (475±) automotive lifts which it purchased from Defendant and sold to various customers.

34. The cost of making the necessary repairs and/or replacing the defective portions thereof is uncertain but will exceed Seventy-Five Thousand ($75,000.00) Dollars by a substantial sum.

35. Plaintiff has been damaged thereby.

36. Plaintiff is therefore entitled to an award of damages against Defendant in an amount to be determined at trial, but in no event less than Five Hundred Thousand ($500,000.00) Dollars.

## SECOND CLAIM FOR RELIEF

### (Breach of Implied Warranty of Fitness for a Particular Purpose)

37. Plaintiff repeats, realleges and reaffirms each and every allegation set forth hereinabove as if set forth at length entirely herein.

38. Defendant is in the business of selling automotive lifts.

39. At the time the parties entered into their agreement in or about November of 2006, Defendant specifically knew that the automotive lifts it agreed to sell Plaintiff were required for the specific purpose of lifting and holding automobiles and

sale by Plaintiff to retail customers of the automotive lifts so purchased from Defendant for that very purpose.

40. At the time the parties entered into their agreement as aforesaid, Defendant knew that Plaintiff was relying on Defendant's skill and judgment to furnish suitable automotive lifts capable of lifting and holding automobiles and the specified weights thereof.

41. Plaintiff in fact relied on Defendant's skill and judgment believing that Defendant would supply it with automotive lifts capable of lifting and holding automobiles and the specified weights thereof.

42. By selling Plaintiff the approximately Four Hundred Seventy-Five (475±) automotive lifts aforesaid, Defendant warranted that such automotive lifts would be fit for the particular purpose of lifting and holding automobiles.

43. The automotive lifts sold by Defendant to Plaintiff are not fit for their intended purpose of lifting and holding automobiles and the specified weights thereof.

44. In selling the approximately Four Hundred Seventy-Five (475±) automotive lifts to Plaintiff which contain plastic rollers and not slider blocks, Defendant knew or should have known at the time of sale that the automotive lifts were incapable of serving their intended purpose as aforementioned.

45. Defendant has thereby breached its warranty of fitness for a particular purpose to Plaintiff.

46. Due to the fact that the automotive lifts sold by Defendant to Plaintiff are not fit for their particular purpose, Plaintiff must now repair and/or replace all

of the failing or "suspect" parts of the automotive lifts which it purchased from Defendant and sold to its customers.

47. But for Defendant's failure to provide Plaintiff with automotive lifts fit for their particular purpose, Plaintiff would not have to incur the significant expense of repairing and/or replacing the failing parts or "suspect" parts of the automotive lifts it purchased from Defendant and sold to its retail customers.

48. Plaintiff promptly notified Defendant of its breach of warranty yet Defendant has refused to accept responsibility therefor.

49. The cost of repairing and/or replacing the necessary portions of the automotive lifts that it purchased from Defendant and sold to its customers is unknown but will exceed at least Seventy-Five Thousand ($75,000.00) Dollars by a very substantial sum.

50. Over the years, Plaintiff has carried on an extensive and profitable business and enjoyed a reputation for dealing in goods of the highest type and quality through which Plaintiff has generated a valuable business reputation and goodwill with its customers.

51. By selling the automotive lifts provided by Defendant to its customers, automotive lifts which were not fit for their particular purpose, Plaintiff's business reputation and good will have been severely damaged.

52. This damage to Plaintiff's business reputation and good will constitute a loss that has directly and naturally resulted in the ordinary course of events from Defendant's breach of its warranty to Plaintiff.

53. Plaintiff is therefore entitled to an award of damages against Defendant in an amount to be determined at trial, but in no event less than Five Hundred Thousand ($500,000.00) Dollars.

### THIRD CLAIM FOR RELIEF

**(Breach of Implied Warranty Merchantability)**

54. Plaintiff repeats, realleges and reaffirms each and every allegation set forth hereinabove as if set forth at length entirely herein.

55. Defendant is in the business of selling automotive lifts.

56. In selling the approximately Four Hundred Seventy-Five (475±) automotive lifts to Plaintiff pursuant to the parties' agreement, Defendant warranted that said automotive lifts were merchantable.

57. In selling the approximately Four Hundred Seventy-Five (475±) automotive lifts to Plaintiff, Defendant knew at the time of sale that these automotive lifts were incapable of serving their ordinary purpose.

58. The automotive lifts sold by Defendant to Plaintiff are not merchantable insofar as they are not fit for the ordinary purposes for which they are to be used; to wit: they are incapable of safely lifting and holding automobiles of the specified weight without risk of collapse and breakage of portions thereof.

59. Defendant has thereby breached its warranty of merchantability to Plaintiff.

60. Due to the fact that the automotive lifts sold by Defendant to Plaintiff are not fit for their ordinary purpose, Plaintiff must - to avoid any risk of collapse

- now repair and/or replace portions of all of these automotive lifts which it purchased from Defendant and sold to its retail customers.

61. But for Defendant's failure to provide Plaintiff with merchantable automotive lifts, Plaintiff would not have to incur the significant expense of repairing and/or replacing the portions of the automotive lifts it purchased from Defendant and sold to its retail customers.

62. Plaintiff promptly notified Defendant of its breach of warranty yet Defendant has refused to accept responsibility for the associated cost of notice to all users and a full repair/replacement of all affected parts, together with the necessary installation, and its cost and expense.

63. The cost of repairing and/or replacing the portions of the automotive lifts that it purchased from Defendant and sold to its customers is unknown but will exceed at least Seventy-Five Thousand ($75,000.00) Dollars by a substantial sum.

64. Over the years, Plaintiff has carried on an extensive and profitable business and enjoyed a reputation for dealing in goods of the highest type and quality through which Plaintiff has generated a valuable business reputation and goodwill with its customers.

65. By selling the automotive lifts provided by Defendant to its customers, automotive lifts which were not merchantable, Plaintiff's business reputation and good will have been severely damaged.

C&F: 916962.2

66. This damage to Plaintiff's business reputation and good will constitute a loss that has directly and naturally resulted in the ordinary course of events from Defendant's breach of its warranty to Plaintiff.

67. Plaintiff is therefore entitled to an award of damages against Defendant in an amount to be determined at trial, but in no event less than Five Hundred Thousand ($500,000.00) Dollars.

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendant as follows:

1. On the First Claim for Relief, an Order and Judgment in favor of Plaintiff and monetary damages in an amount to be determined at trial but believed to be in excess of Five Hundred Thousand ($500,000.00) Dollars; and

2. On the Second Claim for Relief, an Order and Judgment in favor of Plaintiff and monetary damages in an amount to be determined at trial but believed to be in excess of Five Hundred Thousand ($500,000.00) Dollars;

3. On the Third Claim for Relief, an Order and Judgment in favor of Plaintiff and monetary damages in an amount to be determined at trial but believed to be in excess of Five Hundred Thousand ($500,000.00) Dollars; and

C&F: 916962.2

4.  Such other and further relief as the Court may deem just and proper, including but not limited to, interest, attorneys' fees, costs, and other expenses.

Dated:  White Plains, New York
        May 12, 2008

Yours, etc.
CUDDY & FEDER LLP
Attorneys for Plaintiff
445 Hamilton Avenue, 14th Floor
White Plains, New York 10601
(914) 761-1300 Tel.
(914) 761-5372 Fax

By: _____
    Joshua J. Grauer (4594)

13

C&F: 916962.2

AUTOMOTIVE LIFT AND EQUIPMENT CORP.
3 Rye Ridge Plaza
Port Chester, New York 10573

May 12, 2008

Re: **<u>Automotive Equipment Lift with Possible Defective Part</u>**

Dear Valued Customer:

It has been brought to our attention that the Model(s) TP9A, TP09A, NT9 and NT09A automotive lifts that you may be presently using may contain 16 plastic rollers which, under certain circumstances, might not be able to sustain the weight and pressure of the elevated vehicle. Therefore, we are immediately sending this Notice to you to provide this alert and advise you of the steps we are taking to continue to provide you with the safest automotive lift equipment available within the industry at the very competitive prices you have come to expect from Automotive Lift And Equipment Corp.

We strongly encourage all customers with these model(s) to take advantage of this opportunity to obtain replacement parts. These parts will be made available to you by Automotive Lift And Equipment Corp. at no cost to you.

To obtain these replacement parts, please contact our customer service department at (800) 305-3773 or email us at sales@americanautomotiveequipment.com.  Until then, for maximum safety and protection, we recommend that you refrain from using these Model Number lifts, if they contain the plastic rollers, and not slider blocks, until you avail yourself of this complementary replacement part program.

Upon hearing from you, we will promptly proceed with efforts to deliver to you the necessary replacement parts and contact you to effectuate the recommended replacement at our complete cost.

We are sorry for any inconvenience but believe first and foremost that in the interest of meeting the highest standards of safety you should be made aware of even the possibility of any defect and take advantage of this opportunity from Automotive Lift And Equipment Corp. for enhanced safety.

If you have any questions at all with respect to this matter, we would be happy to discuss this with you personally.

**Automotive Lift And Equipment Corp.**

C&F: 916824.2

Via certified mail, return receipt requested